IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRUCE FULMER, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:09-CV-2354-N |
| | § | |
| SCOTT KLEIN, *et al*., | § | |
| | § | |
| Defendants. | § | |

**ORDER**

This Order addresses Defendants' motion to dismiss [55].  Plaintiffs, on their own

behalf and on behalf of others similarly situated, bring this action pursuant to the Employee

Retirement Income Security Act of 1974 ("ERISA") section 502(a)(2), 29 U.S.C. §

1132(a)(2).

The Court dismissed Plaintiffs' original consolidated class action complaint (the

"Original Class Complaint") for failure to state a claim on March 16, 2011, *see Fulmer v.

Klein*, 2011 WL 1108661 (N.D. Tex. 2011) (Godbey, J.) ("*Fulmer I*").  However, it granted

Plaintiffs' motion to file an amended complaint, *id.* at *6, and Plaintiffs filed an amended

consolidated class action complaint [82] on March 30, 2011 (the "Amended Class

Complaint").  Defendants now move to dismiss the Amended Class Complaint.  Because

Plaintiffs' fail to overcome the pleading deficiencies that the Court identified in *Fulmer I*,

the Court grants Defendants' motion.

# I. BACKGROUND

## A. The ERISA Plan At Issue[1]

Plaintiffs were participants in the Idearc[2] savings plans for its employees (the "Plan").[3] The Plan is an Eligible Individual Account Plan ("EIAP") under ERISA. Participants could contribute to the Plan and direct their contributions to one or more of the Plan's investment options. The Plan specified that, barring prohibition by Sections 406 or 407 of ERISA, Idearc stock would be an investment option until it was "removed by a plan amendment." The Plan Administrator and the Benefits Committee were fiduciaries, as the term is used in ERISA, of the Plan.

Idearc was a spin-off of Verizon's yellow pages business. Idearc's SEC filings explained that it generated most of its revenue through local and small business advertisements. The filings also showed that Idearc's reliance on local and small businesses exposed them to increased credit risks because those businesses generally have fewer resources and are more likely to fail than big businesses. In the filings, Idearc disclosed that

---

[1] Because Plaintiffs' Amended Complaint does not alter the basic facts, the Court takes these facts from its March 16, 2011 Order granting Defendants' motion to dismiss the Original Class Complaint. *See Fulmer I*, 2011 WL 1108661, at *1.

[2] On January 4, 2010, the company changed its name from Idearc Inc. to SuperMedia Inc. Pls.' Am. Class Compl. ¶ 17.

[3] The Court will use the "Plan" to refer, collectively, to (1) the Idearc Savings Plan for Management Employees – or the "Management Plan" as Plaintiffs refer to it in their Amended Class Complaint, (2) the Idearc Savings and Security Plan for New York and New England Associates – or the "North Plan" as Plaintiffs refer to it, and (3) the Idearc Savings and Security Plan for Mid-Atlantic Associates – or the "Mid-Atlantic Plan" as Plaintiffs refer to it. *See* Pls.' Am. Class Compl. ¶¶ 1, 80-112.

it may never collect debts from delinquent accounts. The filings furthered warned that "a prolonged economic downturn could adversely materially affect [Idearc's] business." Due to the recession, many of the small businesses that comprised Idearc's consumer base failed, and Idearc had to file for bankruptcy.

### B. The Original Class Complaint and Fulmer I

In their Original Class Complaint, Plaintiffs alleged that various members of Idearc's board of directors and Idearc's officers, along with the Plan Benefits Committee and Human Resources Committee, breached their fiduciary duties to Plan participants. *See Fulmer I*, 2011 WL 1108661, at *1. Plaintiffs claimed seven bases for relief. *See id.* In *Fulmer I*, the Court found that "Counts I, II, and IV [of Plaintiffs Original Class Complaint] state[d] substantive claims, and Counts III, V, VI, and VII state[d] derivative claims predicated on underlying violations in the substantive claims." *Id.*

The Court dismissed each of the substantive claims – Counts I, II, and IV – for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See id.* at *1-5. In Count I, Plaintiffs alleged that the Defendants breached their fiduciary duties by continuing "to offer Idearc Stock as an investment alternative," and "failing to liquidate the Idearc Stock holdings when it became imprudent to continue to offer, hold, and purchase Idearc Stock." *Id.* The Court dismissed Count I because it found that the Plan mandated that Defendants invest in Idearc stock, and therefore, "Defendants had no discretion and consequently no fiduciary duty to stop offering Idearc stock" as an investment option. *Id.* at *3. In Count II, Plaintiffs alleged that Defendants breached their duty of candor by incorporating misleading

statements in Idearc's Summary Plan Description ("SPD"). Pls.' Original Class Compl. ¶ 234. In particular, Plaintiffs claimed that Defendants made misleading statements about Idearc's viability in these SEC filings and incorporated the inaccurate statements in Idearc's SPD. *Fulmer I*, 2011 WL 1108661, at *1. The Court dismissed Count II because it found that Defendants did not make misrepresentations while acting in their fiduciary capacities – that is, the SPD did not incorporate the SEC filings. *Id.* at *4. Finally, in Count IV, Plaintiffs alleged that Defendants imprudently failed to diversify. Pls.' Original Class Compl. ¶ 249. The Court dismissed Count IV under ERISA's safe harbor provision, section 404(a)(2), 29 U.S.C. § 1104(a)(2), and because Plaintiffs had not overcome the *Moench* presumption of prudence – a presumption the Third Circuit established in *Moench v. Robertson*, 62 F.3d 553, 571 (3d Cir. 1995), and the Fifth Circuit adopted in *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 254 (5th Cir. 2008). *Fulmer I*, 2011 WL 1108661, at *5. The Court held that Plaintiffs had not shown that "Defendants had knowledge of nonpublic information that would alert them about the imprudence of holding Idearc stock," and that "Idearc's financial instability and potential bankruptcy was public information[;] [i]ndeed, Idearc's SEC filings showed the company relied on businesses that may not survive a prolonged economic downturn." *Id.* (emphasis omitted).

After dismissing Plaintiffs' substantive claims, the Court turned to Plaintiffs' derivative claims – Counts III, V, VI, and VII. In Count III, Plaintiffs alleged that Defendants breached their duty of loyalty, Pls.' Original Class Compl. at ¶ 242; in Count V, they alleged that some Defendants failed to properly appoint, monitor, and inform other

fiduciaries, *id.* at ¶ 255; in Count VI, Plaintiffs alleged that co-fiduciaries failed to prevent or otherwise remedy other fiduciaries' breaches, *id.* at ¶ 260; and in Count VII, they alleged that Defendants failed to avoid conflicts on interests, *id.* at ¶ 274. The Court dismissed each derivative count because "Plaintiffs . . . failed to allege any underlying breaches" of Defendants' fiduciary duties. *Fulmer I*, 2011 WL 1108661, at *6.

### C. The Amended Class Complaint and Defendants' Motion to Dismiss

In their Amended Class Complaint, Plaintiffs claim almost exactly the same violations they claimed in their Original Class Complaint, and they request relief for essentially the same seven claims.[4]  *Compare* Pls.' Original Class Compl. *with* Pls.' Am. Class Compl. They do, however, add sixteen pages of new allegations, using information from the consolidated class action complaint for violations of federal securities laws in *Buettgen v. Harless, et al.*, Civil Action No. 3:09-CV-00791-K (N.D. Tex. filed Apr. 30, 2009) (Kinkeade, J.), a parallel securities case in this District. *See* Pls.' Am. Class Compl. ¶ 52 n.1. With these additional allegations, Plaintiffs first seek to demonstrate Defendants' alleged knowledge of nonpublic information about Idearc that would alert them to the imprudence

---

[4]In their Amended Class Complaint, Plaintiffs change Count II from "Breach of Duty of Candor and Nondisclosure" to "Inaccurate Disclosures and Nondisclosure of Material Information Pertaining to a Plan Benefit," though the claim remains essentially the same – namely, Plaintiffs allege that Defendants omitted information, or "made nondisclosures," and that they made "materially inaccurate representations."  *See* Pls.' Original Class Compl. ¶¶ 231-238; Pls.' Am. Class Compl. ¶¶ 247-54. Plaintiffs also change the specific allegation in Count IV – "Mismanagement of Assets." Now, instead of claiming that Defendants "were required . . . to *diversify* investments in the Plan," Pls.' Original Class Compl. ¶ 248, Plaintiffs claim that Defendants "were required . . . to *divest* assets," Pls.' Am. Class Compl. ¶ 265 (emphasis added).

of investing in Idearc stock. *See* Pls.' Am. Class Compl. ¶¶ 51-71; Pls.' Resp. to Defs.' Mot. Dismiss 6-9 [60]. Plaintiffs also seek to demonstrate that Defendants issued numerous inaccurate disclosures of (or simply did not disclose) facts relevant to Idearc's financial viability in public filings – filings they again allege the SPD incorporated and therefore constitute fiduciary communications regarding the Plan – by adding facts about the alleged misstatements or omissions in each filing. *See* Pls.' Am. Class Compl. ¶¶ 120-24, 130-207; Pls.' Resp. to Defs.' Mot. Dismiss 6-9.

Defendants now move to dismiss Plaintiffs Amended Class Complaint. Defendants argue that Plaintiffs' new allegations still fail to state a claim under *Fulmer I*. *See* Defs.' Mem. Law Supp. Defs.' Mot. Dismiss 1 [55] [hereinafter "Defs.' Mot. Dismiss"]. They further contend that "after having the Plan documents in their possession for over a year, and with this Court's dismissal order laying out . . . why their Original [Class] Complaint fails to state a claim," it appears that Plaintiffs cannot state claims regarding the Idearc Plan at all. *Id.* The Court agrees.

## II. MOTION TO DISMISS STANDARD

When faced with a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). According to the Supreme Court, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face" – i.e., "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007); *see also Ashcroft v.*

*Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).  A plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* (internal citations omitted).  In sum, to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations. *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003); *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989).

In ruling on a Rule 12(b)(6) motion, courts generally limit their review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff.  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  A court may also consider documents attached to a motion to dismiss that are referred to in the plaintiff's compliant and are central to the plaintiff's claim, *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003), as well as the contents of documents filed with the Securities and Exchange Commission.  *Lovelace v. Software Spectrum Inc.,* 78 F.3d 1015, 1018 (5th Cir. 1996).[5]

---

[5]The Court does not decide whether some of Plaintiffs' claims sound in fraud and therefore require Plaintiffs to plead those claims with particularity under Rule 9(b), *see* Defs.' Mot. Dismiss 7, 22-24, because it finds that Plaintiffs' Amended Class Complaint cannot overcome a motion to dismiss under the more lenient pleading requirements of Rule 12(b)(6). If Plaintiffs' claims cannot survive the Rule 12(b)(6) and Rule 8 pleading standards, any fraud claims surely cannot survive a challenge under Rule 9(b).

### III. PLAINTIFFS' AMENDED COMPLAINT DOES NOT OVERCOME PLAINTIFFS' PLEADING DEFICIENCIES FROM *FULMER I*

#### A. Plaintiffs Allege No New Facts That Would Alter The Court's Ruling RegardingDefendants' Duty of Candor – Count II

Plaintiffs Amended Complaint cannot overcome the Court's previous finding that Idearc's SPD did not incorporate Idearc's public filings and that Defendants, therefore, did not violate the duty of candor by omitting material information, making allegedly incorrect statements about Idearc's financial stability, or failing to correct these alleged misstatements in the filings. Though Plaintiffs claim they have "clarifi[ed] that the cited misrepresentations were incorporated into the [SPD] and were made in Defendants' fiduciary capacit[ies]," Pls.' Resp. to Defs.' Mot. Dismiss 9, Plaintiffs' Amended Complaint merely details the content of the filings. *See* Pls.' Am. Class Compl. ¶¶ 120-24, 130-207. They have not provided, nor could they likely provide, any new facts about the SPD showing that it incorporates these filings in the first place.[6]

Plaintiffs also cannot show that Defendants had a duty affirmatively to disclose company information or that Defendants breached their fiduciary duties through "nondisclosure." *See* Pls.' Resp. to Defs.' Mot. Dismiss 9, 16. Plaintiffs have not alleged special circumstances or an inquiry by one of the Plan beneficiaries which would give rise to an affirmative duty to disclose company information under ERISA. *See, e.g.*, *Kujanek v.*

---

[6]Though Defendants "may have breached a fiduciary duty by withholding or misrepresenting information about the value of the [plan] if the misrepresentations were fiduciary communications," *Jimenez v. Mayfield Lumber & Container Corp.*, 2012 WL 176185, at *6 (W.D. Tex. 2012) (citing *Kirschbaum*, 526 F.3d at 256-57), the Court has found that the SDP did not incorporate the filings, and therefore they were not fiduciary communications.

*Hous. Poly Bag I, Ltd.*, 658 F.3d 483 (5th Cir. 2011) (holding that ERISA fiduciary violated duty of loyalty when it did not furnish plaintiff with information about the plan upon his resignation and withheld information about how he may obtain his account funds *after he requested them*); *Ehlmann v. Kaiser Found. Health Plan of Tex.*, 198 F.3d 552, 556 (5th Cir. 2000) (refusing to implement a "broad duty to disclose that would apply regardless of special circumstance or specific inquiry"). And the Court cannot see how Plaintiffs could, in fact, demonstrate a circumstance in which Defendants would have a duty to disclose internal company information outside of public SEC filings so shareholders could trade their Plan investments in company stock. *See Kirschbaum*, 526 F.3d at 256 (noting the illegality of trading on inside information for the benefit of a Plan and stating, "Fiduciaries may not trade for the benefit of plan participants based on material information to which the general shareholding public has been denied access"); *see also In re Citigroup*, 662 F.3d at 143 ("We decline to broaden the application [of cases related to administrative, rather than investment matters] to create a duty to provide participants with nonpublic information pertaining to specific investment options. . . . [F]iduciaries do not have a duty to give investment advice or to opine on the stock's condition[;] . . . such a requirement would improperly transform fiduciaries into investment advisors." (quoting *Edgar v. Avaya, Inc.*, 503 F.3d 340, 350 (3d Cir. 2007)). Accordingly, the Court grants Defendants' motion to dismiss Count II.[7]

---

[7]Plaintiffs incorrectly argue that "binding Fifth Circuit precedent" requires disclosure in this case, citing *McDonald v. Provident Indemn. Life Ins.*, 60 F.3d 234 (5th Cir. 1995). *McDonald*, however, involved "special circumstances," *see Ehlmann*, 198 F.3d at 556, not present here. The Fifth Circuit held that an ERISA fiduciary violated a duty to disclose when he failed to disclose information about changes affecting the plan and its coverage to a small employer and its employee-beneficiaries – namely failing to disclose a re-rating schedule

### B. Plaintiffs Have Alleged No New Facts That Would Alter the Court's Ruling Regarding Defendants' Ability to Amend the Plan – Count I

Plaintiffs have failed to overcome the Court's previous ruling that the Plan mandated that Defendants invest in Idearc stock, and therefore "Defendants had no discretion and consequently no fiduciary duty to stop offering Idearc stock" as an investment option under Count I. *Fulmer I*, 2011 WL 1108661, at *3. Plaintiffs argue that the Amended Class Complaint "clarifies that . . . on or about November 17, 2008, without a Plan amendment, Defendants exercised their discretion under the Plan and prevented Plan participants from making further new investments." Pls.' Resp. to Defs.' Mot. Dismiss 9. They claim that this action "contradicts the idea that Defendants (1) had no discretion to deviate from express Plan terms; and (2) could not deviate from Plan terms absent an amendment to the Plan." *Id.*[8]

However, Plaintiffs' argument is not new. *Compare* Pls.' Original Class Compl. ¶¶ 2 n.2, 88, *with* Pls.' Am. Class Compl. ¶¶ 4, 115. In *Fulmer I*, the Court recognized that "[w]hile Defendants may have been fiduciaries for some purposes, 'an ERISA fiduciary for one purpose is not necessarily a fiduciary for other purposes,'" *Fulmer I*, 2011 WL 1108661, at *3 (quoting *Kirschbaum*, 526 F.3d at 251), and "[a] decision to amend the [P]lan is a

_____

after switching to a replacement insurer. *McDonald*, 60 F.3d at 235, 237. The facts and circumstances of *McDonald* are far from similar to those in the present case. And, as the Fifth Circuit has counseled, in reference to *McDonald*, "these cases, which adopt a case by case or *ad hoc* approach, do not warrant the wholesale judicial legislation of a broad duty to disclose." *Ehlmann*, 198 F.3d at 556.

[8]To the extent that Plaintiffs recycle their argument regarding the Benefits Committee's alleged decision to liquidate Idearc stock, *see* Pls.' Resp. to Defs.' Mot. Dismiss 19-20, the Court notes that it disposed of this argument in *Fulmer I*, *see* 2011 WL 1108661, at *3 n.2.

ORDER – PAGE 10

settlor function not a fiduciary responsibility," *id.*  The parties apparently agree that some Defendants were, indeed, both settlors and fiduciaries.  *See* Pls.' Am. Class Compl. ¶ 116; Defs.' Mot Dismiss 10.  As the Fifth Circuit has counseled, "[e]xcluded from fiduciary responsibilities, however, are the decisions of a plan sponsor to modify, amend[,] or terminate the plan; such decisions are those of a trust settlor, not a fiduciary." *Kirschbaum*, 526 F.3d at 251.  Here, Plaintiffs do not plead facts tending to show that the Defendants with dual roles were not acting in their settlor capacities when amending the Plan,[9] and therefore, the Defendants acting in their fiduciary capacities "had no fiduciary duty to divest or not offer the stock." *Fulmer I* , 2011 WL 1108661, at *3.

Plaintiffs also argue that even if the Plan did not allow Defendants to take action absent a Plan amendment, Defendants had a duty to override the Plan's terms to comply with ERISA.  *See* Pls.' Resp. to Defs.' Mot. Dismiss 21.  They cite *Kirschbaum* for this proposition, among other cases.  *See id.*  In *Kirschbaum*, the Fifth Circuit considered whether fiduciaries have a duty to override the terms of a plan when it considered fiduciaries' duty of prudence under *Moench*.[10]  526 F.3d at 253-57.  Thus, Plaintiffs' argument regarding a

---

[9]Plaintiffs conclusorily allege "the Company is the 'Plan Administrator,' a named fiduciary under the Plan.  The decision to effectively eliminate future investment in Idearc Stock as a Plan investment option was made by the Company in its capacity as Plan fiduciary.  The modification or amendment of the Plan to give effect to that decision was made by the Company in its capacity as settlor of the Plan." Pls.' Am. Class Compl. ¶ 116 (citations omitted).  Plaintiffs offer no factual support for this assertion.  It is nothing more than the "formulaic recitation of the elements of a cause of action" rejected in *Twombly*.  550 U.S. at 555.

[10]The Court is also aware that the Second Circuit, in *In re Citigroup ERISA Litigation*, 662 F.3d 128, 139-40 (2d Cir. 2011), rejected the proposition that defendants would be insulated from liability because "they had no discretion to divest the Plans of employer

Plan override is tied to the Court's resolution of the *Moench* presumption. The Court turns to this presumption next.

### C. Plaintiffs Cannot Overcome the Moench Presumption – Counts I & IV

As in *Fulmer I*, "Plaintiffs have not pled enough facts to overcome the *Moench* presumption because they have failed to allege that Defendants had access to nonpublic information that would have *compelled* them to diversify or divest."[11] *Fulmer I*, 2011 WL 1108661, at *5 (emphasis added) (citing *Halaris v. Viacom*, 2008 WL 3855044, at *2 (N.D.Tex. 2008) (Godbey, J.)). In *Fulmer I*, the Court described the presumption of prudence as follows:

> A fiduciary in an EIAP has a presumption of prudence when investing in company stock. The Plan in this case was an EIAP and allowed participants to invest in company stock. The presumption of prudence is a substantial shield and cannot be lightly overcome. "[P]laintiffs may state a claim only where a fiduciary's knowledge of *nonpublic information* did or should have made the fiduciary aware that investment in company stock was not only a risky investment, but a bad one – that it was imprudent for the plan to hold even one share of [company] stock, because the price was artificially inflated."

*Fulmer I*, 2011 WL 1108661, at *5 (emphasis in original) (citing *Kirschbaum,* 526 F.3d at 254, 256 and quoting *Halaris*, 2008 WL 3855044, at *2).

---

stock." However, the *Citigroup* court similarly considered this argument in the context of an "override" under the *Moench* test. *See id.*; *see also Pfeil v. State Street Bank & Trust Co.*, 2012 US App. LEXIS 3842 (6th Cir. 2012).

[11]The Court also notes that, though Plaintiffs have changed their allegations in Count IV from alleging that Defendants failed to "diversify" to alleging that they failed to "divest," the word change does not change the Court's ultimate conclusion. In *Fulmer I*, the Court found that "divestment is simply the extreme case of diversifying." 2011 WL 1108661, at *4. It explained: "A divestment claim alleges defendants held too much employer stock; a divestment claim simply adds that even one share is too much. In either case, the gravaman of the claim is the same." *Id.*

In their Amended Class Complaint, Plaintiffs detail "lengthy weekly executive meetings" where Defendants "reviewed monthly and quarterly financial statements," "discussed [Idearc's] rising uncollectible receivables and the appropriate reserve level," and at times had contentious exchanges about problems ailing Idearc.  Pls.' Resp. to Defs.' Mot. Dismiss 24.  Plaintiffs also allege that some Defendants"participated in altering [Idearc's] credit policies" and that Defendants were aware of these alterations because a company department submitted "sales policies" detailing the alterations to Defendants.  *Id.*; *see* Pls.' Am. Class Compl. ¶ 65.  Plaintiffs contend that this information was neither available to the public nor to Plan participants and that, therefore, Defendants had access to nonpublic information demonstrating that it was imprudent to invest in Idearc.  Pls.' Resp. to Defs.' Mot. Dismiss 24.

However, that Defendants or Idearc "made bad business decisions is insufficient to show that the company was in a 'dire situation'" requiring Defendants, in their fiduciary capacities, to divest.  *In re Citigroup*, 662 F.3d at 140; *see also, e.g.*, *Edgar*, 503 F.3d at 348 (stating, with regard to "corporate developments that were likely to have a negative effect on the company's earnings," such as the fact that the costs of integrating a corporate acquisition were higher than the defendants publicly stated, changes to the company's method of delivering products causing severe disruptions in sales, and a dramatic reduction in demand for company products, that"[w]e cannot agree . . . that these developments, or the corresponding drop in stock price, created the type of dire situation which would require defendants to disobey the terms of the Plans by not offering the [company] [s]tock [f]und as

an investment option, or by divesting the Plans of [company] securities."); *cf. Kirschbaum*, 526 F.3d at 256 ("One cannot say that whenever plan fiduciaries are aware of circumstances that may impair the value of company stock, they have a fiduciary duty to depart from . . . EIAP plan provisions.").[12]   Accordingly, Plaintiffs have not alleged nonpublic facts that would have compelled Defendants to override the Plans terms under *Moench*.

Plainly, Idearc appears to have suffered growing pains after its spin-off from Verizon. This, coupled with the economic downturn in 2008, unfortunately hurt Plaintiffs' investments. *See* Defs.' Mot. Dismiss 5.  The Court sympathizes with Plaintiffs regarding these losses.  However, these circumstances do not overcome the *Moench* presumption that Defendants were prudent in continuing to offer Idearc stock.  Accordingly, the Court grants Defendants' motion to dismiss Counts I and IV.[13]

---

[12]To the extent Plaintiffs again allege that Idearc's 2009 bankruptcy should have alerted Defendants to the imprudence of investing in Idearc stock, the Court notes that it has considered and rejected this argument. *See Fulmer I*, 2011 WL 1108661, at *5.  As the Court reasoned in *Fulmer I*,

> While Plaintiffs allege that Defendants knew or should have known that Idearc was heading to financial ruin, this pleading alone is not sufficient to overcome a Rule 12(b)(6) motion because Idearc's financial instability and potential bankruptcy was *public information*.  Idearc's SEC filings showed that the company relied on businesses that might not survive a prolonged economic downturn.  If this public information should have alerted Defendants of the imprudence of holding Idearc stock, it also should have alerted the Plaintiffs, who had access to the filings and the autonomy to direct the investments of their Plan contributions.

*Id.* (emphasis in original).

[13]Though the Fifth Circuit has adopted the *Moench* presumption, *see Kirschbaum*, it has not addressed whether the presumption applies at the motion to dismiss stage.  Other circuit courts are split on the issue.  The Second and Third Circuits have applied the presumption when considering a motion to dismiss, *see In re Citigroup*, 662 F.3d at 139-40; *Gerren v. McGraw-Hill Cos., Inc.*, 660 F.3d 605, 610 (2d Cir. 2011); *Edgar*, 503 F.3d at 349,

### *D. Plaintiffs' Derivative Claims Fail Because Plaintiffs Have Failed to State Viable Underlying Claims*

As in their Original Class Complaint, Counts III, V, VI, and VII of Plaintiffs' Amended Class Complaint allege that Defendants failed to properly monitor other fiduciaries and otherwise prevent other fiduciary breaches and that Defendants breached their duties of loyalty and avoidance of conflicts. As the Court held in *Fulmer I*, "[t]o prevail on these derivative claims, Plaintiffs must prevail in the underlying allegations of breaches of fiduciary duties." *Fulmer I*, 2011 WL 1108661, at * 6. "Because the Court holds that Plaintiffs' have failed to allege any underlying breaches, the derivative claims likewise fail." *Id.*; *see also Gerren*, 660 F.3d at 611. Accordingly, the Court grants Defendants' motion to dismiss Counts III, V, VI, and VII.

### CONCLUSION

---

while the Sixth Circuit has declined to do so, *see Pfeil v. Kammer*, 2012 US App. LEXIS 3482, at *12-25. The Court agrees with the Second and Third Circuits that the presumption is applicable when considering a motion to dismiss. *See Fulmer I*, 2011 WL 1108661, at *5; *see also, e.g.*, *Edgar*, 503 F.3d at 349 ("[Plaintiff] argues that the [d]istrict [c]ourt's application of *Moench*[] . . . at the motion to dismiss stage is somehow inconsistent with the liberal pleading standards set forth in Rule 8 . . . . We are unconvinced. Quite simply, if a plaintiff does not plead all of the essential elements of his or her legal claim, a district court is required to dismiss the complaint pursuant to Rule 12(b)(6).").

Plaintiffs' Amended Class Complaint fails to overcome the pleading deficiencies that the Court identified in *Fulmer I*.[14]  Accordingly, the Court grants Defendants' motion, and it dismisses Plaintiffs' Amended Class Complaint with prejudice.

Signed March 15, 2012.

David C. Godbey
United States District Judge

---

[14]Though both parties advance numerous alternative arguments in their briefs, the Court need not address those arguments here given that Plaintiffs' Amended Class Complaint has failed to remedy the deficiencies it identified in *Fulmer I*.

ORDER – PAGE 16